UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHRISTINE VALLEE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 1:11-cv-00481-WTL-MJD |
| ) | |
| STATE OF INDIANA/DEPT. OF ) | |
| TRANSPORTATION, ) | |
| ) | |
| Defendant. ) | |

**ENTRY REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This cause is before the Court on the Defendant's motion for summary judgment (dkt. #32). The motion is fully briefed, and the Court, being duly advised, **DENIES** the Defendant's motion.

**I. STANDARD**

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Id.* Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court

is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## II. BACKGROUND

The facts taken in the light most favorable to the Plaintiff are as follow.[1]

The Plaintiff, Christine Vallee, began working for the Defendant, the Indiana Department of Transportation, on October 2, 2006, as an Inventory Control Specialist in the Traffic Department. Tom Bewley was Vallee's supervisor at most times relevant to this action.

Bewley was in charge of executing Vallee's performance evaluations. On May 2, 2007, Vallee received an evaluation rating of "Meets Expectations." Valle was nominated for Employee of the Year in the Traffic Department in 2007. In 2008, she was again nominated and this time received the award. On January 27, 2009, Vallee received a performance evaluation of "Exceeds Expectations." On March 10, 2010, Vallee received a performance rating of "Meets Expectations."

In July 2009, a position as Paint and Markings Supervisor became available. Forty-six people applied for this vacant position, including Vallee. Bewley and Jason Jones reviewed applications and resumes and selected applicants for interviews. Vallee was the only female granted an interview for this position.

The job posting for the Paint and Markings Supervisor position stated, under "Preferred Experience: High School graduate or GED. Preferred three (3) years Traffic Operations experience. Applicant must have a valid commercial driver's license to legally operate motorized equipment of size and type referenced herein." This position required maintenance of signs and

---

[1] The facts that follow are derived in large part from Vallee's Statement of Additional Facts Not in Dispute, none of which the Defendant disputes with respect to this motion. Reply Mem. in Supp. of Mot. for Summ. J. 5, April 17, 2012, ECF No. 41.

markings, establishment and implementation of plans, support and supervision of coworkers and employees, operation of state vehicles, and presence at meetings and training sessions.

On September 9, 2009, Vallee received a letter that stated, in part, that she had not received the position of Paint and Markings Supervisor, but "we encourage you to continue to apply and interview for positions with the State of Indiana." Ultimately, a male by the name of Patrick Szewczak was hired for the position of Paint Supervisor, and it was Bewley who made the decision to hire Szewczak. Szewczak did not work for the Indiana Department of Transportation prior to his hire and he did not have a Class A CDL at the time of hire, and Bewley knew this. Vallee, on the other hand, had worked for the Department of Transportation for nearly three years and had a valid Class A CDL.

On June 1, 2010, Vallee filed a charge of discrimination with the Equal Employment Opportunity Commission that alleged sex discrimination for failure to promote Vallee to the position of Paint and Markings Supervisor.

In 2010, another employee left his position as a Paint Supervisor reporting to Bewley. Five females, including Vallee, applied for this position, but the Defendant did not interview any of the female applicants, including Vallee. The individuals who made the decision not to grant Vallee an interview, which included Bewley, were aware of her charge of discrimination against the Defendant alleging sex discrimination.

Bewley testified that he could not remember why Vallee was not selected for an interview, but according to the Defendant, "Plaintiff was not interviewed for this position at this time as she was previously interviewed for the position in 2009." Michael Pegan, a male who had not complained of sex discrimination, interviewed for the Paint Supervisor position in 2009 and again in the summer of 2010. Ultimately, the Defendant, and in particular Bewley, hired

David Reed, a male, for the position of Paint Supervisor. At the time of his hire, Reed had never made a complaint of sex discrimination or filed a charge of discrimination against the Defendant.

After his hire, Bewley told Reed to "watch out" for Vallee because she might try to "get him" with something. He also told Reed that Vallee had filed a sexual harassment charge against him and he told Reed that "ladies in the sign shop stir up trouble." On one occasion, Reed also witnessed Bewley tell Szewczak to document any issues that came up with Vallee.

Two months after Vallee filed a charge of discrimination with the EEOC, the Defendant disciplined Vallee for direct insubordination, possessing a negative attitude, and conduct unbecoming a state employee. According to the disciplinary memorandum, Vallee "tried without success to have another employee file false allegations against [Bewley]" and she also "refused to attend" a meeting in Bewley's office, instead she "stood outside the office" with her back "turned to the office door." Vallee contests the factual basis underlying this memorandum, clarifying that she simply asked another employee, Jessica Basey, whether Basey would be willing to tell management about a conversation Basey had overheard. Vallee also asserts that there were not enough chairs in the meeting for her to sit down, so she stood by the nearest open table and took notes during the meeting.

Also in August 2010, after Vallee requested that she be transferred to avoid contact with Bewley, Vallee was assigned to the Panel Sign crew, which Vallee asserts is the most physically demanding job in the department. This new position required Vallee to work with the road crew roughly three days per week when she previously had done so only two days per week. During her work with this crew, Vallee injured her back.

In September 2010, Vallee was again disciplined, this time for running a background check on a supervisor while at work. Vallee admits that she ran a background check, but

contends that there exists within the department a history of disparate punishment for improper use of work computers. Vallee also noticed that Bewley's attitude, demeanor, and method of communication with her negatively changed after she filed her charge. Bewley started taking notes on Vallee and ordered Szewczak to take notes on Vallee. Vallee was also given more job duties after she filed her charge of discrimination; specifically, there was disagreement over the proper process for checking road lighting data, and Bewley was "pickier on the road logs." Bewley also once told Vallee that she would be held accountable for other employees' mistakes on the road logs.

Reed's employment with the State ended on October 28, 2010, and this created yet another vacancy for the position of Paint Supervisor. Four females, including Vallee, applied for the position of Paint Supervisor in November 2010, but Vallee was not granted an interview. The individuals who made the decision not to grant Vallee an interview were aware of her charge of discrimination against the Defendant. Ultimately, the Defendant hired Adam Jones for the position of Paint Supervisor. At the time of his hire, Jones had never made a complaint of sex discrimination or filed a charge of discrimination against the Defendant. When asked, Bewley again testified that he did not know why Vallee was not selected for an interview, but according to the Defendant, "Plaintiff was not interviewed for this position at this time as she was previously interviewed for the position in 2009." Bewley testified that he would never refuse to hire an employee because they had already interviewed for a position and failed to receive the position.

On January 27, 2011, Vallee received the lowest performance rating of her career, which is characterized as "Does Not Meet Expectations."

On April 8, 2011, Vallee filed the instant action, alleging that the Defendant had discriminated against her because of her sex by failing to promote her to the Paint Supervisor position. She also alleges that the Defendant retaliated against her after she filed a charge of sex discrimination with the EEOC by (1) failing to promote her to another open Paint Supervisor position in 2009; (2) again failing to promote her to the same position in 2010; and (3) creating what she calls a "hostile work environment."

### III. DISCUSSION

#### A. Failure to Promote

Vallee asserts that the Defendant's failure to promote her to Paint Supervisor was because of her gender and therefore violates Title VII. Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1).

Vallee asserts that she has stated a prima facie case of sex discrimination for failure to promote her to the position of Paint Supervisor. In order for a claim for failure to promote "[t]o move past summary judgment . . . , a plaintiff must first establish a prima facie case by showing that [she] is a member of a protected class, [she] applied for and was qualified for an open position, [she] was rejected for the position, and the position was filled with a person not in the protected class who had similar or lesser qualifications than the plaintiff." *Grigsby v. LaHood*, 628 F.3d 354, 358 (7th Cir. 2010). "After the plaintiff has made out a prima facie case, the burden shifts to the defendant to produce a legitimate, nondiscriminatory reason for the employment action. This is a light burden." *Stockwell v. City of Harvey*, 597 F.3d 895, 901 (7th

Cir. 2010). "If the employer offers such a reason, the plaintiff must then show that the proffered reason is actually a pretext for illegal discrimination." *Grigsby*, 628 F.3d at 359.

The parties do not dispute that Vallee is a member of a protected class and that she was rejected for the position. The analysis thus turns on whether Vallee has produced sufficient evidence that was she was qualified for the position and that the person ultimately hired had similar or lesser qualifications than she.

Vallee points to her CDL and her past job experience as evidence that she was qualified for the position. In response, the Defendant baldly asserts that "she was not," – qualified, that is – but then does not explain in any detail how Vallee was not qualified for the position; rather, the Defendant focuses solely on arguing that Szewczak was *more* qualified than Vallee for the position. Nevertheless, it is not the Defendant's burden, and the Court inquires into whether Vallee was indeed qualified. The Court finds sufficient evidence from which a reasonable jury could conclude that Vallee was qualified: she had a GED; she had nearly three years of experience with the Department of Transportation; she had a valid Class A CDL; and she had consistently met expectations on her performance reviews.

With respect to whether Szewczak had similar or lesser qualifications than Vallee, Vallee has put forth sufficient evidence from which a reasonable jury could conclude that Szewczak had lesser qualifications. For example, the starkest difference in qualifications between Vallee and Szewczak is the fact that Vallee had a valid Class A CDL while Szewczak did not. The Defendant argues that this "is a distinction without a difference as the possession or lack thereof of a CDL which [sic] can be easily remedied." The Defendant's argument is belied by the fact that the job advertisement specifically provides that the "[a]pplicant *must* have a valid commercial driver's license to legally operate motorized equipment of size and type referenced

7

herein" (emphasis added). Viewing the facts in the light most favorable to Vallee – which on this issue means taking the job announcement at face value – a reasonable jury could conclude that Szewczak was less qualified for the job than Vallee, as it appears that she met all of the statement requirements to apply for the job and he did not.

Given this showing, an inference of discrimination on the part of the Defendant arises, but the Defendant may dispel that inference by articulating a non-discriminatory, legitimate reason for the personnel action. The Defendant argues that it hired Szewczak because he "had stronger credentials and an expressed desire for the type of work involved unlike Vallee who wanted a desk job." However, Vallee has put forth enough evidence from which the jury could reasonably conclude that Szewczak did not have stronger credentials; in fact, he did not even have the required credentials. Thus, even though the Defendant's burden is light, the Court finds that it has failed to meet its burden to articulate a non-discriminatory legitimate reason for choosing Szewczak over Vallee.

For these reasons, the Defendant is not entitled to summary judgment on Vallee's discrimination claim.

## B. Retaliation

Vallee also asserts a claim for retaliation. The anti-retaliation provision of Title VII provides that it is "an unlawful employment practice for an employer to discriminate against any of his employees . . . because [she] has opposed any practice made an unlawful employment practice . . . or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. §2000e-3(a)

Vallee argues that she has put forth sufficient evidence of retaliation to avoid summary judgment. In order to do so, Vallee must produce evidence from which a reasonable jury could

conclude: (1) that she engaged in a statutorily protected activity; (2) that she suffered a materially adverse action by her employer; and (3) there was a causal link between the two. *Benuzzi v. Bd. of Educ. of City of Chicago*, 647 F.3d 652, 664 (7th Cir. 2011). "'Materially adverse actions' are those that might dissuade a reasonable employee from engaging in protected activity . . . ; this category sweeps more broadly than the 'adverse employment actions' required to sustain a discrimination claim." *Id.* at 665 (citations omitted). Under this method, "a plaintiff may offer circumstantial evidence of intentional retaliation, including evidence of suspicious timing, ambiguous statements, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn." *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007).

There is no dispute that Vallee engaged in a statutorily protected activity when she filed a charge of sex discrimination with the EEOC, but the two remaining elements are contested. Regarding the second element, Vallee argues that she suffered adverse actions when the Defendant did not grant her interviews for two subsequent Paint Supervisor openings and when her supervisor began to treat her differently. Specifically, Vallee argues that she suffered a false negative performance evaluation, fabricated written discipline, and a turned-hostile supervisor after she filed the EEOC charge. Vallee argues that

> Bewley's attitude, tone of voice, and overall demeanor changed towards Vallee after she filed her charge of discrimination. He made rude comments to Vallee, such as "remember who you work for." He told Reed, "ladies in the sign shop stir up trouble." Bewley told Szewczak to take notes on Vallee.

Finally, when Vallee requested a transfer to a different supervisor, she was transferred to the interstate panel sign crew, "perhaps the most difficult and labor intensive crews [sic] in the department."

9

The refusal to interview an applicant because she has engaged in statutorily protected activity could effectively prevent an employee from advancing her career. In this way, it would dissuade an employee from engaging in protected activity in the future and could therefore constitute a materially adverse action. Similarly, viewing the facts in the light most favorable to Vallee, her supervisor's actions – sudden rude behavior, written warnings, and negative performance evaluations – could together dissuade a reasonable employee from engaging in protected activity in the future. Therefore, a reasonable jury could conclude that the conduct alleged by Vallee constituted adverse employment actions for Title VII retaliation purposes.

According to Vallee, an inference of causation arises from suspicious timing between the filing of her charge on June 1, 2010, and the denial of interviews to her for positions in August and November 2010. However, "[t]he mere fact that one event preceded another does nothing to prove that the first event caused the second; the plaintiff also must put forth other evidence that reasonably suggests that her protected speech activities were related to her employer's discrimination." *Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007) (citing *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 758-59 (7th Cir. 2006)); *see also Benuzzi*, 647 F.3d at 666 ("The two-month time frame separating Benuzzi's first amended EEOC complaint and her second suspension is, without more, insufficient to give rise to a similar inference [of causation]."). Here, the timing of Vallee's charge and her applications in 2010 is not so close to render it suspicious on its own. However, some of the actions of which Vallee complains add context to the timing of the Defendant's actions – for example, Bewley's remark that "ladies in the sign shop stir up trouble," and his sudden decision to take notes on Vallee's work – and render it suspect. In addition, Vallee also draws the Court's attention to the Defendant's proffered reason for its failure to interview her. Specifically, the Defendant contends that "Plaintiff was not

10

interviewed for this position at this time [i.e., 2010] as she was previously interviewed for the position in 2009." However, according to Vallee, this assertion is undercut by the fact that a male applicant who interviewed in 2009 was again interviewed in 2010. This inconsistency is indeed quite curious and constitutes the type of "bits and pieces" from which discriminatory intent can be inferred. Accordingly, after viewing the totality of the facts in the light most favorable to Vallee, the Court is unable to say that no reasonable jury could find that the Defendant retaliated against Vallee. Therefore, the Defendant is not entitled to summary judgment on Vallee's retaliation claim.

### IV. CONCLUSION

For the foregoing reasons, the Defendant's motion for summary judgment is **DENIED**.

SO ORDERED: 08/09/2012

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.